Patricia ELAM, et vir, Appellant,

v.

YALE CLINIC, et al., Appellees.

No. C14–88–783–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 7, 1989.

T.D. Sullivan, Bellaire, for appellant.

Keith S. Dubanevitch, Madelyn De-Woody, Houston, for appellees.

Before PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a summary judgment in a medical malpractice case. Appellants, Patricia Elam and Robert Elam, brought suit for personal injuries allegedly sustained by them due to medical treatment and care provided to Patricia Elam by Dr. A.W. Vila, O.D. and by nurse-employees of the Yale Hospital and Clinic when Mrs. Patricia Elam was an in-patient there. Appellants submit the trial court erred in granting summary judgment in favor of Dr. Vila and the Yale Hospital and Clinic. We affirm.

On or about April 20, 1980, appellant, Patricia Elam, was undergoing treatment at the Yale Hospital and Clinic for pain in her upper back and cervical region possibly aggravated by trauma sustained in a car accident. Dr. A.W. Vila, O.D., was the osteopath and general surgeon who attended appellant. In response to appellant's complaints of pain, Dr. Vila ordered intramuscular injections of talwin and phenergan. Pursuant to Dr. Vila's orders, Nurse Nobles injected appellant with talwin and phenergan at 3:25 p.m. and at 7:45 p.m. on April 20, 1980. On April 21, 1980, appellant's shoulder appeared to be slightly irritated. Dr. Vila determined that the administration of hot packs to appellant's right deltoid muscle was indicated. On April 25, 1980, Dr. Vila examined appellant prior to her discharge when appellant had no complaints concerning her shoulder. On May 1, 1980, appellant returned to Dr. Vila's office complaining of shoulder pain and inflammation. Dr. Vila performed an incision and drainage of an abscess situated under appellant's right deltoid muscle. He prescribed antibiotics by mouth and instructed appellant to return to his office in three days. Appellant did not keep her follow-up appointment with Dr. Vila.

On May 3, 1980, Dr. Sadque Naficy, M.D., a plastic surgeon, attended appellant when she arrived at the emergency room at

Citizen's General Hospital. Dr. Naficy observed that appellant's upper right arm manifested skin necrosis three to four centimeters in diameter with some surrounding inflammation. He admitted appellant to Citizen's General Hospital, discharging her on May 5, 1980. On May 9, 1980, Dr. Naficy examined appellant in his office and observed that the area of appellant's skin necrosis had further demarcated to six by three and one-half centimeters. On May 15, 1980, Dr. Naficy re-admitted appellant to Citizen's General Hospital to debride the necrotic tissue at the wound site and to correct the deformity with a local advancement flap. A Citizen's General Hospital document entitled *"Nursing Care Flow Sheet"* contained a May 18th, 1980 entry recording that appellant had stated she had been accidentally bumping into objects and hitting her upper arm.

On May 27, 1980, Dr. Naficy examined appellant post-operatively at his office. He found necrotic tissue on one side of the wound site. Dr. Naficy again admitted appellant, on June 4, 1980, to debride the lateral necrotic skin and to revise the wound site under general anesthesia. Subsequent to her surgery and while still an in-patient, appellant scratched into the dressing covering the wound site and the nurse reinforced the dressing with kerlex. Appellant then had a fall. Most of the sutures were avulsed and the wound was disrupted, causing contamination of the wound. A culture of the wound revealed growth of staff aureus, coagulase positive. Dr. Naficy ordered intravenous antibiotics and the wound became clean in a few days. Granulation tissue gradually formed in the bed of the wound. On June 23, 1980, Dr. Naficy performed a split thickness graft from the right hip and applied to the right upper arm. On June 27, 1980, Dr. Naficy found that the graft took 100 percent and he discharged appellant. On July 1, 1980, Dr. Naficy attended appellant post-operatively at his office. He found that the skin graft had basically taken, except for some small areas.

On July 9, 1980, appellant notified Dr. Naficy's secretary that she was cancelling her appointment scheduled for Friday, July 11, 1980 because appellant was going to find another doctor. On July 14, 1980, Dr. Naficy spoke with appellant. Appellant then returned to Dr. Naficy's office on July 15, 1980. Dr. Naficy's July 15th, 1980 notation in appellant's chart read: "Doing fine, completely healed, graft bed is getting—has levelled off, return to the office in two weeks."

On August 8, 1980, appellant returned to Dr. Naficy's office and the grafted area was completely raw again. Dr. Naficy could not explain the loss of the graft. He decided to treat the condition conservatively and to allow healing by secondary intention.

On October 23, 1980, Dr. Naficy re-admitted appellant to debride the wound under general anesthesia. On October 30, 1980, under general anesthesia, Dr. Naficy performed a skin graft at the wound site. On November 6, 1980, the patient was discharged and Dr. Naficy's discharge summary noted that the graft was viable and showed a 100% take. Dr. Naficy attended appellant post-operatively at his office on November 11 and November 21, 1980. He noted that the graft was doing very well on both occasions.

On November 25, 1980, appellant's husband notified Dr. Naficy that appellant's graft had come off. Dr. Naficy stated that it was then that he began to think that there must be some unknown factor which was causing appellant's graft to come off. When Dr. Naficy saw appellant in his office on November 25, 1980, he found that skin had separated from the graft on the medial side, leaving a gap of about 1.5 cm. Dr. Naficy applied tapes to close the gap. On December 5, 1980, Dr. Naficy next saw appellant and noticed that the raw area was healing.

On December 22, 1980, appellant called Dr. Naficy complaining both of pain and also that the "holes in her arm were bigger." Dr. Naficy's December 23rd, 1980 notation in appellant's chart read: "The small area of $1 \times 0.8$ cm medially still has not epitiliarized. Patient also complains of some vague symptoms which she cannot

pinpoint ... Cold and weak, it is not pain, but it is ache ..." Dr. Naficy treated appellant's condition conservatively.

March 30th, 1981 was appellant's final appointment with Dr. Naficy. Dr. Naficy's March 30th, 1981 notation in appellant's chart read as follows: "Graft has healed well, there is a small scab $1 \times 0.5$ cm medially. Examination of muscles, upper arm and forearm range of motion, sensory and force of long flexors and extensors, as well as intrinsics are within normal limits. I cannot find anything to account for these vague symptoms. Will have to send her to another physician for a second opinion."

On May 5, 1982, appellants filed suit against Dr. Vila and Yale Hospital and Clinic. On June 11, 1987, the hospital and Dr. Vila moved for summary judgment. Appellants responded, requesting additional time to complete discovery and to file a controverting affidavit. On July 20, 1987, the trial court granted appellants' motion for a continuance, providing appellants with an additional thirty days to respond. On August 24, 1987, the trial court granted appellants' second motion for a continuance, allowing appellants an additional thirty days to respond. On September 28, 1987, the trial court considered the affidavit of Dr. Naficy. The trial court also considered the oral motion for leave of the defendants to take the deposition of Dr. Naficy. On December 7, 1987, Dr. Naficy's deposition was taken. On February 12, 1988, the defendants filed their motions to strike Dr. Naficy's affidavit and for rehearing of their summary judgment. On March 14, 1988, the trial court found that the affidavit of Dr. Naficy was incompetent summary judgment evidence and reset appellees' motion for summary judgment to May 17, 1988 during which time the court notified appellants that they were entitled to find and file competent summary judgment evidence. On May 17, 1988, the trial court reheard appellees' motion for summary judgment, sustaining the motion in their favor due to appellants' failure to file competent controverting summary judgment evidence.

Appellants bring two points of error on appeal. Appellants argue the trial court erred in granting appellees' motion for summary judgment: (1) because there were material fact issues present and (2) appellees failed to establish as a matter of law that appellant did not make out a prima facie case. We will consolidate both points of error in our treatment of the case.

■ A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. Unlike an appeal following a trial on the merits, when reviewing the grant of a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. Instead, this court must view the evidence in favor of the non-movant, resolving all doubts and indulging all reasonable inferences in favor of reversal of the summary judgment. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985).

The standards that must be applied when reviewing a summary judgment have been clearly mandated by the Texas Supreme Court in *Nixon,* 690 S.W.2d at 548:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

■ Further, this court must not consider evidence that favors the movant unless it is uncontroverted. *Great American Reserve Co. v. San Antonio Plumbing Supply,* 391 S.W.2d 41, 47 (Tex.1965). The judgment of the trial court cannot be affirmed on any ground not specifically presented in the motion for summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675 (Tex.1979).

A defendant-movant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of the plaintiff's cause of action does not exist. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107–08 (Tex.1984). To recover in a medical malpractice case the plaintiff must prove: "1) a duty requiring the physician to conform to a certain standard of conduct; 2) the applicable standard of care and its breach; 3) injury; and 4) a reasonably close causal connection between the breach of that standard of care and the harm." *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied); *Wheeler v. Aldama–Luebbert*, 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ).

The affidavit of Nurse Lilian Nobles recited that she is a licensed vocational nurse familiar with the standard of care applicable to nurses and hospitals in Houston for all time periods from 1980 to the present; she stated that her review of the medical records reflected that she gave appellant two injections on April 20, 1980 at 3:25 p.m. and 7:45 p.m.; that both injections consisted of talwin and phenergan which had been previously ordered by the patient's physician. Nurse Nobles stated that the standard of care requires that before a patient is medicated the nurse check the medication order on the kardex and the medicine card; she stated that, in compliance with the standard of care, on April 20, 1980, she examined the kardex and medicine card and determined that appellant needed injections of talwin and phenergan; these medications were obtained, the patient was verified, the medication was verified and the method of administration, which had been ordered by the attending physician, was verified. Nurse Nobles then provided a detailed narrative of the procedure utilized by her to administer the medications to appellant. Nurse Nobles concluded that she administered the prescribed medications in compliance with the applicable standard of care and that it was her opinion, based upon a reasonable degree of nursing certainty, that all care and treatment provided by Nurse Nobles to appellant complied with the applicable standard of care.

In his affidavit, Dr. Vila recited his qualifications; he described in detail the care and treatment provided by himself to Mrs. Elam; he stated that he was familiar with the appropriate standards of care applicable to doctors, hospitals and nurses in Houston for all time periods subsequent to 1953; he stated that talwin and phenergan were appropriate and acceptable medications for the treatment of appellant's complaints and condition at that time and that his orders for these medications were in compliance with the applicable standard of care; he stated that it is not necessary for a physician to be physically present at all times when a patient is being injected with medication; Dr. Vila further stated that he is experienced, competent and skilled in treating patients who have had reactions to injections and medications and who have complained of other inflammatory problems similar to appellant's; he stated that it was his opinion the treatment and care provided by himself and Nurse Nobles complied with the applicable standard of care during the time period in question; he concluded that in his opinion based upon a reasonable degree of medical probability there was no causal connection between anything anyone at the Yale Hospital and Clinic did or failed to do and the injuries for which appellants' suit was brought.

The affidavits of Nurse Lilian Nobles and Dr. A.W. Vila are clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies. They were readily controvertible if untrue. We find that both Nurse Nobles' and also Dr. Vila's affidavits were sufficient to negate the elements of breach of the applicable standard of care and the causal connection between the breach of care and the harm suffered. *See* Rule 166a(c); *Milkie v. Metni*, 658 S.W.2d 678 (Tex.App.—Dallas 1983, no writ); *Duncan v. Horning*, 587 S.W.2d 471 (Tex.App.—Dallas 1979, no writ).

When the movant for summary judgment has negated one of the essential elements of the cause of action, the burden is on the non-movant to produce controvert-

ing evidence raising a fact issue as to the element negated. *Pinckley*, 740 S.W.2d at 531; *Nicholson v. Memorial Hospital System*, 722 S.W.2d 746, 751 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Appellants were required to introduce competent controverting summary judgment evidence to show the existence of a material fact regarding the issues of negligence and proximate causation.

Appellants' controverting evidence was an unsigned and unsworn statement attributed to Dr. Sadque S. Naficy, M.D. This document, which was considered by the trial court on September 28, 1987, constituted the whole of appellants' summary judgment proof. At his December 7, 1987 deposition, Dr. Naficy declined to either repeat or to elaborate upon the opinion attributed to him in the unsigned and unsworn statement submitted to the trial court.

An affidavit is defined as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX.GOV'T CODE ANN. § 312.011 (Vernon 1988). Without the notarization, the unsworn statement is not an affidavit. *Failing v. Equity Management Corp.* 674 S.W.2d 906, 909 (Tex.App.—Houston [1st Dist.] 1984, no writ). Accordingly, an unsworn statement is not competent summary judgment proof. *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex.1970); *Sturm Jewelry, Inc. v. First Nat. Bank, Franklin*, 593 S.W.2d 813 (Tex. App.—Waco 1980, no writ). While it is true that purely formal deficiencies in an affidavit can be waived if not raised in the trial court, TEX.R.CIV.P. 166a(e), the absence of a jurat is substantive, and not a purely formal defect and cannot be waived by failing to bring it to the trial court's attention. *Sturm Jewelry, Inc.* 593 S.W.2d at 814.

Absent the submission by appellants of a proper affidavit, there was no controverting summary judgment evidence before the trial court. Accordingly, we find appellants failed to produce contro-

verting evidence to raise a genuine issue of material fact as to the elements of negligence and proximate cause which were conclusively negated by the clear summary judgment proof produced by the Yale Hospital and Clinic and Dr. Vila. Appellants' points of error one and two are overruled.

We affirm the judgment of the trial court.