Affirmed; Opinion of September 21, 2004, Withdrawn and Substitute
Opinion filed February 17, 2005









Affirmed; Opinion of September 21, 2004, Withdrawn and
Substitute Opinion filed February 17, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-00478-CV

_______________

 

MARIO ALANIZ, JR., LUDIVINA ALANIZ HERNANDEZ, RODOLFO
ALANIZ; LUDIVINA ALANIZ HERNANDEZ, AS NEXT BEST FRIEND OF HER MINOR SISTERS,
JUDITH ALANIZ & DIANA ALANIZ; INDIVIDUALLY, JOINTLY & AS
REPRESENTATIVES OF THE ESTATES OF MARIO ALANIZ, DECEASED, AND LUDIVINA ALANIZ,
DECEASED; ELIZABETH SIFUENTES, 

AND ELISA SIFUENTES,
Appellants

 

V.

 

REBELLO
FOOD & BEVERAGE, L.L.C., SRK MANAGEMENT, INC. 

D/B/A HOWARD JOHNSON SUITES, KIRIT PATEL, AND 

HOWARD JOHNSON INTERNATIONAL, INC., Appellees

________________________________________________________________________

 

On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 00CV0308

________________________________________________________________________

 

S
U B S T I T U T E   O P I N I O N








We
withdraw our opinion of September 21, 2004, and issue this substituted
opinion.  In this dram-shop case, we
examine several evidentiary issues, including whether (1) appellants produced
more than a scintilla of evidence in response to appellees= no-evidence summary judgment motion;
(2) appellees= summary judgment evidence
established its entitlement to judgment as a matter of law; and (3) the trial
court erred in granting appellees= motion to strike the testimony of
appellants= expert witness.  We conclude the trial court properly granted
summary judgment and did not err in striking the expert=s testimony.  Thus, we affirm the trial court=s judgment.

Factual and Procedural
Background

Tragically,
in the early morning hours of May 17, 1998, as Mario Alaniz and his wife,
Ludivina, crossed Seawall Boulevard, they were struck and killed by a vehicle
driven by Ronald Kurtz.[1]  The record shows Kurtz began drinking at J.W.=s 8 Mile Road Bait Camp (AJ.W.=s@) during the afternoon hours of May
16.  While at J.W.=s, Kurtz drank between four and six
beers.  At about 9:30 that evening, Kurtz
and several of his friends left J.W.=s and went to the Oasis, a bar owned
by appellee Rebello Food and Beverage Services, L.L.C., d/b/a The Oasis (AOasis@). 
While at the Oasis, Kurtz had two mixed drinks.  He left the Oasis at approximately 11:45 p.m.[2]  Kurtz testified that as he turned onto
Seawall Boulevard, he blacked out and he has no recollection of what happened
thereafter, including the accident, which occurred at approximately 12:40 a.m.
on May 17.








Appellants,
children of Mr. and Mrs. Alaniz, the childrens= aunt, and grandmother, filed suit
against Kurtz[3]
and appellees, Oasis, SRK Management, Inc., d/b/a Howard Johnson Suites (ASRK@), and Kirit Patel,[4]
alleging various causes of action, including suit under the Dram Shop Act.[5]  Appellants claimed appellees served alcoholic
drinks to Kurtz when it was apparent he was obviously intoxicated. 

Appellees
filed a traditional and no-evidence motion for summary judgment arguing (1)
their evidence established it was not apparent to anyone at the Oasis that
Kurtz was obviously intoxicated; and (2) there was no evidence Kurtz was
obviously intoxicated and no evidence of proximate causation.  Appellees also filed a motion to exclude the
testimony of appellants= expert witness, James C. Garriott.  Appellants filed a partial motion for summary
judgment, claiming that appellees= attempt to join Kurtz as a
responsible third party, and thereby apportion liability, was in contravention
of the Dram Shop Act.  After a hearing on
the motions, the trial court granted appellees= motion and denied appellants= motion.  This appeal ensued. 

Issues Presented

In
seven issues, appellants challenge the trial court=s grant of summary judgment in favor
of appellees on the following grounds: (1) appellees= no-evidence summary judgment motion
failed to meet the specificity requirements of Rule 166a(i);[6]
(2) appellants raised more than a scintilla of evidence as to the elements of
their Dram Shop Act cause of action; (3) material issues of fact existed
regarding the apparent intoxication of Ronald Kurtz and proximate causation;
(4) appellees= summary judgment evidence was
insufficient; (5) the testimony of appellants= expert witness should not have been
stricken; (6) appellants= summary judgment motion on the issue of the intoxicated
driver=s comparative responsibility should
have been granted; and (7) the trial court erred in requiring appellants to
produce a blood alcohol level as evidence of obvious intoxication.  We address appellants= issues in the order in which they
are raised. 








Discussion

A.        Did
appellants= no-evidence summary judgment motion meet the requirements
of Rule 166a(i)?  

 

In
their first issue, appellants argue that appellees= no-evidence summary judgment motion
failed to meet the specificity requirements of Rule 166a(i).[7]
 See Tex. R. Civ. P. 166a(i).  Appellants contend appellees= motion merely recites the Dram Shop
Act and makes a general statement as to a lack of evidence.  Appellants argue that because of the lack of
specificity, they did not have sufficient notice as to which elements appellees
were challenging.  After examining the
Dram Shop Act and appellees= no-evidence motion, we conclude the motion was sufficiently
specific under Rule 166a(i). 

Rule
166a(i) provides in part that a no-evidence summary judgment motion must Astate the elements as to which there
is no evidence.@  Id.  Essentially, this requirement prohibits
conclusory no-evidence motions or general no-evidence challenges to an opponent=s case.  See Tex.
R. Civ. P. 166a(i) cmt.; Cuyler v. Minns, 60 S.W.3d 209, 212
(Tex. App.CHouston [14th Dist.] 2001, pet. denied).  

Under
the Dram Shop Act, a plaintiff must prove that at the time alcohol was
provided, sold, or served, it was apparent to the provider that the person
consuming the alcohol was obviously intoxicated to the extent that he presented
a danger to himself and others.  See Tex. Alco. Bev. Code Ann. ' 2.02(b)(1) (Vernon 1995); Borneman
v. Steak & Ale of Tex., Inc., 22 S.W.3d 411, 412 (Tex. 2000).  The plaintiff must also prove that the
intoxication of the person consuming the alcohol was a proximate cause of the
damages suffered.  Tex. Alco. Bev. Code Ann. ' 2.02(b)(2) (Vernon 1995); Borneman,
22 S.W.3d at 412.   

 








In
their summary judgment motion, appellees first provide a factual recitation of
the case and conclude that section with a summation of their no-evidence and
traditional summary judgment grounds. 
After setting forth their arguments on the traditional summary judgment
motion, appellees then state their no-evidence motion arguments, in part, as
follows:

a.         One
element of a dram-shop case is that at the time the provision of alcohol
occurred, it was apparent to the provider that the person being provided with
an alcoholic beverage was obviously intoxicated to the extent that he presented
a clear danger to himself and others. 
Here, there is no evidence that while Kurtz was at the Oasis, it was
apparent to the employees . . . that Kurtz was obviously intoxicated to the extent
that he presented a clear danger to himself and others.  

 

b.         The Dram Shop Act also requires that
the intoxication of the recipient of the alcoholic beverages have been a
proximate cause of the damages suffered. 
Here, there is no evidence that the intoxication of Kurtz was a proximate
cause of the damages suffered.

The foregoing
statements specifically set forth the two elements appellants are required to
prove under the Dram Shop Act and, correspondingly, identify the specific
elements on which appellees contend appellants have no evidence.  See Tex.
Alco. Bev. Code Ann. ' 2.02(b); Borneman, 22 S.W.3d at 412 (setting out
elements a plaintiff must prove under Dram Shop Act).  Thus, appellees have satisfied the
requirements of Rule 166a(i).  See,
e.g., Johnson v. Felts, 140 S.W.3d 702, 706B07 (Tex. App.CHouston [14th Dist.] 2004, pet.
denied) (citing Johnson v. Brewer & Pritchard, 73 S.W.3d 193, 207
(Tex. 2002)); Lampasas v. Spring Center, Inc., 988 S.W.2d 428, 436 (Tex.
App.CHouston [14th Dist.] 1999, no
pet.).  Further, the motion sufficiently
put appellants on notice of the elements being challenged by appellees.  Accordingly, we overrule appellants= first issue.  








B.        Did
material issues of fact preclude the trial court=s grant of summary judgment? 

 

In
their second and third issues, appellants argue, respectively, that the trial
court erred in granting appellees= no-evidence summary judgment motion
regarding Kurtz=s intoxication, and in granting appellees= traditional summary judgment motion
on the issue of intoxication because material fact issues exist as to Kurtz=s Aapparent intoxication@ and causation.  Although appellants argue these issues
jointly in their appellate brief, we address each separately.  Because the trial court=s judgment does not specify the
grounds for its ruling, we may affirm judgment on any meritorious ground raised
in the motion.  Pa. Pulp & Paper
Co. v. Nationwide Mut. Ins. Co., 100 S.W.3d 566, 570 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).

1.  No-Evidence
Summary Judgment

a.         Standard of review








A
party may move for summary judgment on the basis that there is no evidence of
an essential element of the non-movant=s cause of action.  Tex.
R. Civ. P. 166a(i).  To defeat a
no‑evidence summary judgment motion, a party must produce more than a
scintilla of probative evidence raising a genuine issue of material fact on the
challenged elements.  See Tex. R. Civ. P. 166a(i) cmt.; Lampasas,
988 S.W.2d at 432.  We will sustain the
trial court=s judgment if (1) there is a complete
absence of proof of a vital fact; (2) rules of law or evidence bar the court
from giving weight to the only evidence offered to prove a vital fact; (3) the
evidence offered to prove a vital fact is no more than a scintilla; or (4) the
evidence conclusively establishes the opposite of a vital fact.  Coastal Conduit & Ditching, Inc. v.
Noram Energy Corp., 29 S.W.3d 282, 284 (Tex. App.CHouston [14th Dist.] 2000, no pet.).
We view the evidence in the light most favorable to the non‑movant,
disregarding all contrary evidence and inferences.  Randall=s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Flameout
Design & Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830,
834 (Tex. App.CHouston [1st Dist.] 1999, no
pet.).  AUnlike a movant for traditional
summary judgment, a movant for a no‑evidence summary judgment does not
bear the burden of establishing a right to judgment by proving each claim or
defense.@ 
Lake Charles Harbor & Terminal Dist. v. Bd. of Trs. of Galveston
Wharves, 62 S.W.3d 237, 241 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).

More
than a scintilla of evidence exists if the evidence rises to a level that would
allow reasonable and fair-minded people to differ in their conclusions.  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 601 (Tex. 2004).  However, when the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and is, in effect, no evidence. 
Id.  Circumstantial
evidence may be used to establish a material fact, but to raise a genuine issue
of material fact, the evidence must transcend mere suspicion.  Id. 
AEvidence that is so slight as to make
any inference a guess is in legal effect no evidence.@ 
Id.

b.         Discussion

As
previously stated, on appellants= Dram Shop Act claims, they must
prove two elements: (1) that at the time alcohol was provided, sold, or served,
it was apparent to the appellees that Kurtz was obviously intoxicated to the
extent he presented a danger to himself and others; and (2) Kurtz=s intoxication was a proximate cause
of the damages suffered.  See Tex. Alco. Bev. Code Ann. ' 2.02(b);[8]
Borneman, 22 S.W.3d at 412.  In
the trial court, appellees argued there was no evidence that at the time Kurtz
was served, it was apparent to the employees of the Oasis that he was obviously
intoxicated to the extent that he presented a clear danger to himself and
others and there was no evidence of proximate causation.








In
response to appellees= motion, appellants produced no direct evidence that while
being served at the Oasis, Kurtz was obviously intoxicated.  Instead, appellants pointed to circumstantial
evidence which they claim raises a fact issue regarding Kurtz=s obvious intoxication.  Primarily, appellants rely on a 40-second
video tape made of Kurtz at a convenience store where he stopped just after the
accident, at approximately 12:38 a.m.[9]
in the morning hours of May 17. 
Appellants also rely on the testimony of Michael Reilly, a customer at
the convenience store when Kurtz entered, who testified that Kurtz appeared
obviously intoxicated while at the convenience store.  He stated that when Kurtz entered the store
he was staggering and when Kurtz spoke, he was loud.  Reilly also testified that it appeared Kurtz
may have urinated on himself.  However,
given that Kurtz was at the convenience store approximately fifty to fifty-five
minutes after leaving the Oasis, the video tape, and similarly Reilly=s testimony, establish only that when
Kurtz was at the convenience store, he appeared obviously intoxicated.  See J.D. Abrams, Inc. v. McIver, 966
S.W.2d 87, 91B92 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied).  Under the facts of this case, this evidence does not
establish that Kurtz was obviously intoxicated while being served at the Oasis,
and any inferences regarding his obvious intoxication while there would amount
to no more than mere speculation.   Thus, this evidence is in effect, no evidence, and fails to
raise a sufficient fact issue.

Appellants
also point to evidence that Kurtz blacked out only Aseconds@ after leaving the Oasis.  Relying on El Chico Corp. v. Poole, 732
S.W.2d 306 (Tex. 1987), appellants argue that circumstantial evidence that a
driver has Ablacked-out due to consumption of
alcohol@ sufficiently raises a fact issue and
that they have brought forward the same evidence as in El Chico;
however, for the reasons discussed below, we conclude El Chico is
distinguishable.[10]













First,
in El Chico, there was no question the intoxicated driver had left the
provider=s establishment only moments before
the accident occurred.  The evidence in
that case established this fact.  Id.
at 308, 314.  Here, viewing the evidence
in appellants= favor, the record indicates that
Kurtz left the Oasis at approximately 11:45 p.m.; however, the accident
occurred some fifty to fifty-five minutes after that time, regardless of when
he may have blacked out.[11]  Appellants argue that because the accident
occurred within two miles of the Oasis, we must infer that Kurtz left the bar
at a time much closer to the accident. 
However, the record evidence reflects that Kurtz left the Oasis some
time between 10:30 p.m. and 11:45 p.m.; therefore, any such inference would be
merely speculation and conjecture.[12]  As noted, although evidence of Kurtz=s obvious intoxication and the
requisite proximate causation may be established by circumstantial evidence,[13]
the evidence must transcend mere suspicion and conjecture.  See Lozano v. Lozano, 52 S.W.3d 141,
149 (Tex. 2001); Calp v. Tau Kappa Epsilon Fraternity, 75 S.W.3d 641,
648 (Tex. App.CAmarillo 2002, pet. denied).  A vital fact may not be established by Apiling inference upon inference.@ 
Entex v. Gonzalez, 94 S.W.3d 1, 8 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied) (citing Schlumberger Well Surveying Corp. v. Nortex Oil & Gas
Corp., 435 S.W.2d 854, 858 (Tex.1968)). 
Facts from which an inference may properly be drawn must be established
by direct evidence and not by other inferences. 
Id.  Here, appellants would
have this court draw inferences from Kurtz=s conduct at the convenience store
and then pile those inferences upon inferences, and this we cannot do.

Moreover,
plaintiff=s burden of proof in El Chico was,
as acknowledged by the El Chico court, less onerous than is appellants= burden in this case.  See El Chico, 732 S.W.2d at 315
(stating that with the enactment of Section 2.02 of the Alcoholic Beverage
Code, the Legislature created a more onerous burden of proof for a
plaintiff).  In El Chico, the
plaintiff was required to prove only that the beverage server Aknew or should have known@ that the individual was
intoxicated.  See id. at 314.  In this case, appellants must prove that at
the time alcohol was provided, sold, or served, it was apparent to the
appellees that Kurtz was obviously intoxicated to the extent he presented a
danger to himself and others.  An
inference the alcohol provider knew or should have known an individual was
intoxicated is more reasonable when an accident occurs within a close temporal
proximity to his leaving the provider=s establishment.  In this case, this temporal proximity has not
been established.

The
facts in this case are more appropriately analogized to those in J. D.
Abrams, Inc. v. McIver, in which the First Court of Appeals determined that
although there was evidence of the driver=s intoxication at the accident scene,
because the accident occurred one hour after leaving the premises of the
defendant=s establishment, there was no
evidence that the driver appeared Aobviously intoxicated@ to the alcohol provider, to the
extent the driver presented a clear danger to himself and others.  966 S.W.2d 87, 91B92 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied).  The First Court of Appeals
distinguished El Chico primarily on this time differential.  Id. 









Likewise,
here, although the video tape and Reilly=s testimony may be evidence that
Kurtz was intoxicated immediately following the accident, because the accident
occurred some fifty to fifty-five minutes after Kurtz left the Oasis, we do not
agree that it is evidence he was obviously intoxicated while being served at
that establishment.  Although we
recognize that circumstantial evidence may be used to establish any material
fact, to raise a genuine issue of material fact the evidence must transcend Amere suspicion.@ 
Ford Motor Co., 135 S.W.3d at 601.  The evidence relied on by appellants raises
only suspicions and is, in effect, no evidence. 
Moreover, there is no evidence in the record pertaining to when Kurtz
may have been served his last drink at the Oasis, nor any evidence regarding
Kurtz=s whereabouts during the fifty to
fifty-five minute time interval between his departure from the bar and the
deadly accident.  Kurtz has no
recollection of the events which occurred during that period of time and there
is no other evidence in the record to account for it.  Given this, we cannot infer from Kurtz=s appearance on the video tape that
he was Aobviously intoxicated@ while at the Oasis and that this
intoxication was the proximate cause of the accident.[14]  See, e.g., J.D. Abrams, 966
S.W.2d at 92 (finding evidence of intoxication at scene of accident occurring
fifty-five minutes after leaving the premises of a defendant alcohol provider
was no evidence the driver was Aobviously intoxicated@ while at that defendant=s establishment).








Appellants
also claim that appellees= own expert witness, Dr. Wayne Snodgrass, testified that
Kurtz was Aimpaired@ upon arriving at the Oasis.  However, examining Snodgrass=s testimony in context, he
specifically testified that Kurtz was Aimpaired for driving.@ 
He then explained that a person may be Aimpaired for driving@ when his blood alcohol level is .05,
though the legal limit for driving while intoxicated in Texas is .08.  Further, Snodgrass explained that even though
an individual may be impaired for driving at a blood alcohol level of .05, that
individual may not show any observational effects of the alcohol.  Considering Snodgrass=s testimony, we cannot say that the
statement raises a fact issue sufficient to defeat summary judgment.[15]  








Appellants
argue that Snodgrass also testified it was not probable that Kurtz=s intoxicated state, as displayed in
the video, arose after leaving the Oasis. 
In eliciting this statement from Snodgrass, appellants= counsel asked how many drinks Kurtz
would have had to consume between 11:45 p.m., the time Kurtz left the Oasis,
and the time of the accident to appear as he did in the video, assuming
Kurtz had a blood alcohol level of zero at 11:45 p.m.  Snodgrass responded that Kurtz would have had
to consume 9, 10, or 11 drinks in 53 minutes to get his blood alcohol level to
.3, the point when Kurtz would be exhibiting observational effects of alcohol.  Appellants= counsel followed up, asking
Snodgrass, A[i]s that possible to do that, drink
that many drinks in 55 minutes?@  Snodgrass stated, AIt=s possible.  Probably not likely.@ 
Thus, in posing the hypothetical, counsel specifically asked Snodgrass
to assume Kurtz had a blood alcohol level of zero at 11:45 p.m., an assumption
contrary to the evidence in the case. 
There is no dispute that Kurtz, in fact, had been drinking that evening
and the record evidence indicates that Kurtz could not have had a zero blood
alcohol level when he left the Oasis. 
When an expert=s opinion is based on assumed facts that vary materially from
actual, undisputed facts, the opinion has no probative value and is therefore,
no evidence.  See Burroughs Wellcome
Co. v. Crye, 907 S.W.2d 497, 499B500 (Tex. 1995).  The issue here is whether Kurtz was Aobviously intoxicated@ while being served at the Oasis such
that he presented a danger to himself or others.  Snodgrass=s response to the hypothetical posed
is not more than a scintilla of probative evidence and fails to raise a genuine
issue of material fact.[16]

In
sum, we conclude appellants failed to present more than a scintilla of evidence
that at the time alcohol was provided, sold, or served to Kurtz while he was at
the Oasis, it was apparent to appellees that he was obviously intoxicated to
the extent he presented a danger to himself and others.  Therefore, the trial court did not err in
granting appellees= no-evidence summary judgment motion.  Having determined this, it is not necessary
to examine whether the trial court also properly granted appellees= traditional summary judgment
motion.  See Ford Motor Co., 135
S.W.3d at 600.  However, we conclude that
appellees also established their entitlement to a traditional summary judgment.

2.  Traditional
Summary Judgment

a.         Standard of Review

A
traditional summary judgment is proper only when the movant establishes there
is no genuine issue of material fact and it is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548B49 (Tex.
1985); Corporate Leasing Int=l, Inc.
v. Groves, 925 S.W.2d 734, 736 (Tex. App.CFort
Worth 1996, writ denied).  A trial court properly grants summary
judgment in favor of a defendant if that party conclusively establishes all
elements of an affirmative defense, or conclusively negates at least one
element of the plaintiff's claim.  Am.
Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  We must take as true all evidence favorable
to the non-movant and make all reasonable inferences in the non-movant=s favor.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).








Once
a defendant produces sufficient evidence establishing its right to summary
judgment, the burden shifts to the plaintiff to come forward with competent,
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant. 
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Borth v.
Charley=s Concrete Co., 139 S.W.3d 391, 394 (Tex. App.CFort Worth 2004, pet. denied) (citing
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995)).

b.         Discussion

Appellees= summary judgment evidence included
the affidavit and deposition testimony of Melody Albonetti, the individual
serving drinks to Kurtz and several others accompanying him while he was at the
Oasis.  Albonetti stated that Kurtz did
not appear intoxicated at the time she served the drinks to him.  She also stated that Kurtz was not slurring
his words, having trouble communicating, acting loud, boisterous or aggressive,
and that he was not overly friendly to other guests or exhibiting other
inappropriate behaviors.  She further
testified that Kurtz was not buying drinks for strangers or acting careless
with his money, he was not using foul language or making irrational statements,
and he was not stumbling or bumping into things.  In sum, Albonetti stated that when she served
the drinks to Kurtz, he did not appear obviously intoxicated to the extent he
presented a clear danger to himself or others. 








Brenda
Ragan, also at the Oasis that evening, stated in her affidavit that she had
successfully completed a Texas Alcoholic Beverage Commission-approved Alcohol
Sellers/Servers Program, that she was with Kurtz at the Oasis and had observed
him and interacted with him and he did not appear to be intoxicated.  She stated further that Kurtz, Aappeared to be sober and in full
control of his mental faculties and bodily movements.@ 
Like Albonetti, Ragan also testified that Kurtz was not exhibiting a
list of behaviors traditionally construed as evidence of intoxication.[17]  Further, Ragan stated that based upon her
training and experience, at no time did Kurtz appear obviously intoxicated to
an extent that he presented a danger to himself or others.[18]    

In
his deposition, James W. Carra, the owner of J.W.=s and a friend of Kurtz, stated that
based upon his observations of Kurtz while at the Oasis, Kurtz did not appear
obviously intoxicated to the extent he presented a danger to himself or
others.  Bobbi Carra, James=s wife, testified similarly.  Although she acknowledged she was not really
paying any attention to Kurtz, she testified that based on her observations of
him, he was not obviously intoxicated while at the Oasis.  Appellees also provided a transcript of the
testimony of Theresa Yancey from the criminal proceeding against Kurtz.  Yancey accompanied Kurtz and the others to
the Oasis on May 16.  She testified that
Kurtz did not appear drunk when he left the bar.  Yancey stated A[Kurtz] seemed all right, . . .
.  He didn=t seem drunk.  He had no slurred words or physical
impairment, unable toCweave or anything.@ 


Kurtz=s deposition testimony was also
attached to appellees= summary judgment motion. 
Kurtz testified that he suffered from post-traumatic stress disorder (APTSD@) due to his combat service in
Vietnam where he served as a Marine.  He
also stated that at the time of the accident, he was taking three medications
for the PTSD, including Trazadone, Zoloft, and Lithium Carbonate.  He stated he was not intoxicated on the night
of the accident.  Kurtz testified that
after getting into his truck in the Oasis parking lot, he took one-half of a
Trazodone tablet, approximately 100 milligrams. 
Shortly thereafter, he blacked out. 








Finally,
appellees also produced a report from their expert, Snodgrass, which concluded
that A[t]he description of Ronald Kurtz as
not being visibly intoxicated at the [Oasis] is consistent with known medical
and scientific information regarding tolerance to alcohol.@

In
light of this evidence, establishing that Kurtz did not appear obviously
intoxicated while at the Oasis, it was incumbent upon appellants to present
evidence raising a genuine issue of material fact with regard to this
element.  However, as discussed in the
preceding section, appellants= evidence failed to raise a fact issue.

In
sum, we affirm the trial court=s granting appellees= summary judgment motion and overrule
appellants= second and third issues.[19]

C.        Did the
trial court err in granting appellees=
motion to strike appellants=
expert?

 

In
their fifth issue, appellants argue the trial court erred in granting appellees= motion to strike their expert
witness, Dr. James Garriott.  In their
motion, appellees assert that Garriott=s testimony is unreliable because
Garriott relied on inaccurate assumptions about Kurtz=s alcohol consumption, his opinions
were speculative, and he admitted that without an actual blood alcohol level
for Kurtz, he could not estimate an accurate blood alcohol level while Kurtz
was at the Oasis.  We agree. 








We
review the trial court=s decision to exclude an expert=s affidavit under an abuse of
discretion standard.  Blan v. Ali,
7 S.W.3d 741, 744 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (citing Gammill v.
Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998)).  The trial court abuses its discretion when
its ruling is arbitrary, unreasonable, or made without reference to any guiding
rules or legal principles.  See id.


An
expert opinion that is not based on a reliable foundation is inadmissible.  Tex. R.
Evid. 705(c); Weiss v. Mech. Associated Servs., Inc., 989 S.W.2d
120, 124 (Tex. App.CSan Antonio 1999, pet. denied).  The burden is on the proponent of the
evidence to demonstrate scientific reliability. 
Weiss, 989 S.W.2d at 124. 
Also, A[e]xpert opinions must be supported
by facts in evidence, not conjecture.@ 
Marathon Corp. v. Pitzner, 106 S.W.3d 724, 729 (Tex. 2003); see
also United Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997) (per
curiam) (noting that supporting and opposing affidavits, under Rule 166a(f),
must set forth facts as would be admissible in evidence).  

In
his report, Garriott opined as to Kurtz=s blood alcohol level at 11:30 p.m.
on May 16, stating it would be .090 to .115, based on the assumption that Kurtz
consumed four to six beers from 6:00 p.m. to 9:00 p.m., and two regular mixed
drinks while at the Oasis.  Garriott also
opined regarding Kurtz=s blood alcohol level if the mixed drinks were Adoubles,@ and thus raising the estimated blood
alcohol levels.  In his deposition,
however, Garriott admitted there was no evidence the drinks were doubles.  Garriott also acknowledged that given a
longer duration of consumption, blood alcohol levels would be lower.  Although the evidence established Kurtz may
have begun drinking as early as 1:00 p.m. on the afternoon of May 16, or as
late as 4:30 that afternoon, Garriott=s opinions were based on the
assumption that Kurtz began drinking at 6:00 p.m. despite the lack of record
evidence that Kurtz began drinking at that later time.  When an expert=s opinion is based on assumed facts
that vary materially from the actual facts, the opinion has no probative value
and is no evidence.  See Burroughs v.
Wellcome Co. v. Crye, 907 S.W.2d 497, 499B500 (Tex. 1995).  Also, Garriott admitted he did not take into
account whether Kurtz had eaten, though the evidence indicated he had.  Garriott acknowledged further that food
intake slows down the absorption of alcohol, affecting observational effects of
drinking.   








Importantly,
during his deposition Garriott described the case as a Alittle bit unusual@ because generally, when he testified
as an expert on intoxication, he would have a blood alcohol level to
extrapolate from in estimating a person=s level of intoxication.  Garriott admitted that he relied Avery heavily@ on a known blood alcohol level in
giving his opinions and making interpretations; however, he acknowledged there
was no known blood alcohol level to work with in this case.  Indeed, he admitted that because he did not
have a blood alcohol level from which he could work, his opinion in this case
was less reliable.

Garriott
also stated that he could not testify to a reasonable medical probability or
reasonable toxicological probability what Kurtz=s physical appearance may have been
while he was at the Oasis and agreed that those witnesses physically present at
the Oasis while Kurtz was there were in the Abest position to provide testimony
and information regarding [Kurtz=s] physical characteristics and
appearance during that time.@

Because
Garriott had no actual blood alcohol level from which to extrapolate, his
methodology was admittedly less reliable. 
In addition, Garriott based his calculations on facts not in evidence
and on assumptions that were contrary to facts. 
Examining Garriott=s report and testimony in light of the above, we cannot say
the trial court abused its discretion in excluding Garriott=s testimony.[20]  We overrule appellants= fifth issue.  

D.        Did the
trial court err in denying appellants=
partial summary judgment motion?

 








In
their sixth issue, appellants argue the trial court erred in denying their
summary judgment motion regarding apportioning liability to Kurtz.  However, appellants= motion for partial summary judgment
did not seek a final judgment and therefore, we lack appellate jurisdiction to
review the trial court=s denial of that motion.[21]  Chair King, Inc. v. GTE Mobilnet of
Houston, Inc., 135 S.W.3d 365, 396 (Tex. App.CHouston [14th Dist.] 2004, no pet.)
(citing CU Lloyd=s of Texas v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998)).  Because we may not address an issue not
properly before this court, we do not consider appellants= sixth issue. 

For
the foregoing reasons, the judgment of the trial court is affirmed.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered
and Substitute Opinion filed February 17, 2005.

Panel consists of
Chief Justice Hedges, Justices Frost and Guzman. 

 

 











[1]  The record
reflects Kurtz was tried and convicted in a criminal proceeding in connection
with the deaths of Mario and Ludivina Alaniz. 






[2]  The summary
judgment evidence indicates Kurtz left the Oasis between 10:30 p.m. and 11:45
p.m.  





[3]  Appellants
later non-suited their claims against Kurtz. 





[4]  Appellants
also filed suit against Howard Johnson International, Inc.  The trial court granted summary judgment in
favor of Howard Johnson International and appellants do not challenge that
judgment on appeal.





[5]  See Tex. Alco. Bev. Code Ann. '' 2.01B.03 (Vernon 1995) (hereinafter ADram Shop Act@).  





[6]  Tex. R. Civ. P. 166a(i).





[7]  This court
previously has held that the sufficiency of a motion under Rule 166a(i) may be
challenged for the first time on appeal. 
Cuyler v. Minns, 60 S.W.3d 209, 213 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).





[8]  Prior to the
enactment of section 2.02 of the Alcoholic Beverage Code, an alcohol provider=s duty to discontinue serving alcohol arose Aonce, through the observation of a patron=s demeanor, conduct or appearance, [the provider]
knows or should know the patron is intoxicated.@  El Chico Corp. v. Poole, 732 S.W.2d 306,
313 (Tex. 1987).  However, with the
enactment of section 2.02, the Legislature created a more onerous burden of
proof for a plaintiff.  Id. at
315.





[9]  The police
report indicates the accident happened at 12:40 a.m. on May 17, but appellees
do not dispute that the accident happened prior to the video recording.  





[10]  Appellants
make a similar argument in reference to the El Chico court=s noting that the intoxicated driver was an
alcoholic.  However, the El Chico
court based its holding on the fact that the driver showed signs of
intoxication at the accident scene, which occurred within minutes of leaving the
alcohol provider=s premises.  El
Chico, 732 S.W.2d at 315.  In this
case, we do not have the temporal connection present in El Chico such
that we can reasonably infer that, because Kurtz was an alcoholic and blacked
out, his involvement in an accident approximately fifty minutes later
establishes he exhibited signs of obvious intoxication while at the Oasis.  





[11]  The El Chico
court based its holdingCthat the driver=s Aapparent intoxication@ at the
scene of the accident raised a fact issue as to whether the employees knew or
should have known of his intoxicationCon the
temporal proximity of the accident to the driver=s
leaving the defendant=s establishment. 
732 S.W.2d at 315.  The court
mentioned that the intoxicated driver also had blacked-out.  Id. at 308.





[12]  Appellants
argue there is a fact issue as to when Kurtz left the Oasis, relying on an
unsworn, unsigned transcript of a telephone conversation with Brenda Ragan, a
friend of Kurtz who was also at the Oasis that evening, in which she stated
that when she left the Oasis at 11:45 p.m., Kurtz was still sitting at the
bar.  However, the unsworn, unsigned
transcript is not competent summary judgment evidence and, therefore, we do not
consider it in our analysis.  See
Perkins v. Crittenden, 462 S.W.2d 565, 568 (Tex. 1970) (holding that
unsworn statement was not an affidavit and could not support summary judgment);
Geiselman v. Cramer Fin. Group, Inc., 965 S.W.2d 532, 537 (Tex. App.CHouston [14th Dist.] 1997, no pet.) (finding the trial
court should not have considered an incompetent affidavit in ruling on a motion
for summary judgment); Elam v. Yale Clinic, 783 S.W.2d 638, 643 (Tex.
App.CHouston [14th Dist.] 1989, no writ) (stating absence
of jurat is substantive defect in affidavit and is not waived by failing to
bring it to trial court=s attention); Conte v. Ditta, No.
14-02-00482-CV, 2003 WL 21191296, at *3 (Tex. App.CHouston [14th Dist.] May 22, 2003, no pet.) (not
designated for publication) (finding that, without notarization, a statement is
not an affidavit and is not competent summary judgment proof and could not be
considered on appeal, citing Coastal Cement Sand, Inc. v. First Interstate
Credit Alliance, Inc., 956 S.W.2d 562, 567 (Tex. App.CHouston [14th Dist.] 1997, writ denied)). 





[13]  Cianci v.
M. Till, Inc., 34 S.W.3d 327, 331 (Tex. App.CEastland
2000, no pet.); Perseus, Inc. v. Canody, 995 S.W.2d 202, 207 (Tex. App.CSan Antonio 1999, no pet.).  





[14]  Appellants
also rely on the statement of appellee=s expert
witness, Dr. Wayne Snodgrass, that Kurtz was Aprobably@ inebriated while at the convenience store,
based on his appearance in the video tape. 
However, for the same reasons discussed above, the video tape is no
evidence of whether Kurtz was obviously intoxicated while at the Oasis and we
do not consider Snodgrass=s conclusion as probative evidence raising a fact
issue regarding whether Kurtz was obviously intoxicated while at the Oasis.





[15]  Further,
appellants point to the testimony of their expert witness as raising a fact
issue; however, the trial court sustained the appellees= motion to exclude the testimony of appellants= expert witness, an issue raised by appellants on
appeal and addressed later in this opinion. 
Because we find the evidence was properly excluded by the trial court,
we do not consider it in our analysis of the summary judgment.  See Praytor v. Ford Motor Co., 97 S.W.3d
237, 246 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 





[16]  Also, in
response to appellees= summary judgment motion, appellants furnished a
portion of J. W. Carra=s testimony in which he stated he was not Akeeping an eye on [Kurtz] or watching him, per se.@  Appellants
argue this is evidence that Carra was not observing Kurtz for signs of
intoxication and thus, raises a fact issue. 
Carra=s testimony, as relied on by appellees, is limited to
his observations of Kurtz while at the Oasis. Stating he was not Akeeping an eye@ on
Kurtz does not raise a fact issue as to whether Kurtz appeared obviously
intoxicated while at the Oasis when observed by Carra.    





[17]  Ragan=s affidavit stated: 

 

Based
upon my personal observation of Ronald Kurtz, he did not appear confused, nor
did he appear to be suffering from impaired perception, impaired memory or
comprehension, increased reaction time, sensory motor incoordination [sic],
disorientation, impaired imbalance, drowsiness, general muscular incoordination
[sic], or slurred speech. . . . Ronald Kurtz did not have glassy eyes,
clumsiness in motion, staggering, an unsteady gait while walking, nor was
Ronald Kurtz making inappropriate responses to the conversation of those around
him or to those whom [sic] he was speaking. 






[18]  Appellants did
not provide evidence controverting Ragan=s
statement.





[19]  In their
fourth issue, appellants also challenge the affidavits furnished by appellees,
arguing the witnesses were not observing Kurtz while he was at the Oasis,
Albonetti=s testimony was contradictory, and the witnesses were
all Ainterested witnesses@ and
were themselves intoxicated while at the Oasis. 
However, because affidavits of interested witnesses present a defect of
form rather than a defect of substance, preservation for our review requires an
objection in the trial court.  See Tex. R. Civ. P. 166a(f); Ahumada v.
Dow Chem. Co., 992 S.W.2d 555, 562 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied). 
Further, even when a proper objection is lodged, affidavits remain part
of the summary judgment record unless there is a written, signed order
sustaining the objection.  Id. (citing
Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156, 160 (Tex. App.CWaco 1995, no writ)); Cain v. Rust Indus. Cleaning
Servs., Inc., 969 S.W.2d 464, 466 (Tex. App.CTexarkana
1998, pet. denied).  In this case,
although appellants generally stated in their response to appellees summary
judgment motion that A[a]ll of [appellees=]
evidence consists of interested witnesses,@ there
is no specific objection to the evidence and no ruling by the trial court.  Thus, appellants have failed to preserve this
argument for our review.





[20]  In light of
this holding, we do not address appellants= seventh
issue, that the trial court erred in Arequiring
that Appellants produce a blood alcohol level as evidence of obvious
intoxication.@  





[21]  Moreover,
appellants= issue is rendered moot by the trial court=s summary judgment.