**Reversed and Dismissed in part; Affirmed in part and Opinion Filed May 7, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01551-CV

### MICHAEL DREW, GOVERNMENT ENERGY MANAGEMENT, LLC, EVOLVING SOLUTIONS IN ENERGY, LLC, DONOVAN CUNNINGHAM, AND ACCESS FEDERAL BUSINESS, LLC, Appellants
### V.
### ELUMENUS LIGHTING CORPORATION, INC., Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-02318-2013**

## MEMORANDUM OPINION

Before Justices Bridges and Fillmore[1]
Opinion by Justice Bridges

Michael Drew, Government Energy Management, LLC (GEM), Evolving Solutions in Energy, LLC (ESE), Donovan Cunningham, and Access Federal Business, LLC (Access) appeal the trial court's denial of their respective special appearances. Appellants filed two briefs. First, Drew, GEM, and ESE argue the trial court erred in denying their special appearances, they sustained their burden of negating all bases of jurisdiction pled by Elumenus, the trial court erred in concluding Elumenus's response to the special appearances could contain the jurisdictional allegations they were required to negate, the trial court abused its discretion in denying their motion to strike Elumenus's third amended petition, and the trial court erred in considering the

---

[1] Justice David Lewis was a member of the panel and participated in the submission of this case, but he did not participate in the issuance of the opinion. TEX. R. APP. P. 41.1(b).

allegations in Elumenus's third amended petition. In a separate brief, Cunningham and Access mirror the other appellants' arguments that the trial court erred in denying their special appearance, they sustained their burden of negating all bases of jurisdiction pled by Elumenus, and the trial court abused its discretion in denying their motion to strike Elumenus's third amended petition and considering the allegations in Elumenus's third amended petition. In addition, Cunningham and Access argue the trial court erred in concluding they consented to jurisdiction in Texas, the evidence is legally and factually insufficient to support the trial court's finding/conclusion they consented to jurisdiction in Texas and that it would not be unreasonable to enforce a forum selection clause against them. We reverse the trial court's denial of Cunningham's special appearance and dismiss Elumenus's claims against Cunningham for lack of jurisdiction. In all other respects, we affirm the trial court's order.

In June 2013, Elumenus filed its original petition and application for injunctive relief against appellants and others in Collin County, Texas. The petition alleged Elumenus is a Texas limited liability corporation with its principal place of business in Plano, Texas. Elumenus is in the LED lighting business, contracting with overseas companies to manufacture and ship LED lighting to Elumenus in the United States for resale. Sometimes, Elumenus contracts with the overseas company to manufacture the component parts of the lighting product and ship it to Elumenus in the United States, where the component parts are assembled and delivered to the customer. In either case, Elumenus may also contract with its customer to install the lighting or train the customer regarding the use and maintenance of the lighting.

Beginning in 2011, Elumenus worked to secure contracts with the United States government for the provision of LED lighting for military facilities in the United States and its territories. In January 2012, Elumenus obtained a government contract with Federal Prison Industries (UNICOR), which operates the manufacturing and assembly plants inside federal

prisons in the United States. The contract with UNICOR related to the refurbishing of United States Army reserve bases. When Elumenus was awarded the UNICOR contract, it had a manufacturing source in China for indoor LED lighting component parts but did not yet have a source for the manufacture of outdoor LED lighting component parts. At the time, however, it appeared Elumenus's Chief Executive Officer, Ken Rainbolt, was developing a relationship with Dongguan Kingsun OptoElectronic Co. Ltd. in China.

In "April-May 2012," Elumenus was awarded a contract to install outdoor lighting at Fort Buchanan, Puerto Rico. At that time, Rainbolt informed the Elumenus Board of Directors that ESE, not Elumenus, had an exclusive contract with Kingsun, and Elumenus needed to order the outdoor lighting through ESE. Rainbolt allegedly negotiated with ESE and its president, Drew, to create an agreement between Elumenus and ESE whereby Elumenus would pay only a small markup on product ordered through ESE. In August 2012, another UNICOR project required Elumenus to provide outdoor lighting components to be processed through UNICOR's Danbury, Connecticut location. Once again, Rainbolt insisted that ESE had to be involved, claiming ESE still had an exclusive contract with Kingsun.

In October 2012, Elumenus entered an agreement with Access under the terms of which Access would assist Elumenus in the development and improvement of the processes and the relationship between Elumenus and UNICOR, as well as with Elumenus and its other clients, customers, and vendors. The contract provided that Access was an independent contractor. As to the applicable law, the contract provided: "This agreement shall be governed by and construed and interpreted in accordance with the substantive laws of the State of Texas." The contract further provided as follows:

> 4.05 Disputes. Access and Elumenus will attempt to settle any controversy, dispute, difference, or claim between them concerning the performance, enforcement, or interpretation of this Agreement (collectively, "Dispute") through direct discussion in good faith, but if unsuccessful, will

–3–

submit any Dispute to non-binding mediation in Dallas, Texas. If the parties are unable to agree on a mediator or a date for mediation, either party may request JAMS, Inc. to appoint a mediator and designate the time and procedure for mediation. Such mediator shall be knowledgeable, to each party's reasonable satisfaction, with respect to matters concerning construction law. If mediation is unsuccessful the parties may submit such Dispute to a Court of proper jurisdiction. The exclusive venue for any such lawsuit shall be in the state or federal courts in Collin County, Texas. Neither Party will file a lawsuit against the other until not less than sixty (60) days after the mediation referred to herein has occurred, unless one or both parties is genuinely and reasonably concerned that any applicable statute of limitations is on the verge of expiring or if the circumstances necessitate the seeking of injunctive relief. The exclusive venue for any such lawsuit shall be in state or federal courts.

All notices under the contract were to be sent to Cunningham, and Cunningham signed the contract as the "duly authorized representative" of Access. Rainbolt signed on behalf of Elumenus.

All of the products provided by Elumenus needed UL certification. Elumenus paid for the certification process in its entirety, yet Drew, allegedly without Elumenus's knowledge or consent, arranged to have ESE's name put on the certification as the listee on the product. As a result, Elumenus did not have its name on the certification, which UNICOR cited as a defect in Elumenus's performance. ESE and Drew refused to remove ESE as listee or add Elumenus's name.

In December 2012, it became apparent Drew had told Kingsun that Elumenus was not a company with which it should do business; Elumenus was a bad business partner; and ESE, rather than Elumenus, was the stateside manufacturer. In early 2013, Drew obtained a deal for himself and other appellants with UNICOR to provide additional LED lighting at Fort Buchanan, Puerto Rico. Elumenus was excluded.

In February 2013, Cunningham sent a notice to Elumenus terminating their agreement. It later became apparent that Cunningham was attempting to sell Elumenus's product to the

Department of Commerce and was trying to contact Elumenus's China factory representatives directly for pricing and product in an attempt to circumvent Elumenus.

Don Trout, Elumenus's sales manager, allegedly worked with Drew and ESE to sell ESE's product to UNICOR for assembly and use on United States military bases. Although Trout had a confidential disclosure agreement with Elumenus in which he agreed not to make use of trade secrets or confidential information, including customer lists and pricing, Elumenus alleged Trout made use of Elumenus's customer lists, products, and other information in marketing LED lighting products for sale outside of and in violation of his agreement with Elumenus.

Based on these allegations, Elumenus asserted claims for breach of contract, tortious interference with an existing contract and prospective relations, breach of fiduciary duty, breach of the covenant not to compete, conversion, theft, fraud, defamation, business disparagement, and trade secret misappropriation. Elumenus sought damages and injunctive relief in the form of a temporary injunction enjoining appellants from interfering with Elumenus's business relationships or competing with Elumenus.

Appellants filed special appearances and motions to dismiss. The trial court set a hearing on the special appearances for October 17, 2013. Two days before the hearing, Elumenus filed its third amended petition reiterating the allegations from its prior pleadings. In addition, the third amended petition alleged venue was proper in Collin County, Texas because Elumenus is a Texas resident; one or more appellants contractually agreed with Elumenus that any lawsuit between the parties would be filed in Collin County, Texas; and other appellants had purposefully availed themselves of the benefits of the laws and protections of the State of Texas and otherwise subjected themselves to the jurisdiction of the Collin County court. The petition alleged ESE and Drew worked "hand in hand" with Trout and were able to learn about the

projects UNICOR awarded Elumenus and all of Elumenus's perspective contract with UNICOR. ESE and Drew had significant access to Elumenus's dealings with UNICOR and the "Elumenus/UNICOR value proposition." Drew, ESE, and Trout put together sales sheets and other marketing materials bearing the Elumenus and UNICOR logos. On the marketing materials, Drew listed himself as a contact and provided an Elumenus email address rather than his ESE email address. Drew listed himself as the "National Product Manager" of Elumenus/UNICOR.

The third amended petition further alleged that Rainbolt "forged a secret alliance" with Drew and ESE. As part of this alliance, Drew, ESE, and Rainbolt arranged to have ESE's name put on the certification as the UL listee on products to be provided to UNICOR. In late 2012, Elumenus informed Drew that it would no longer buy product from his company under their agreement, and a new agreement would be necessary. Elumenus had discovered the distributor agreement between Rainbolt and Drew and decided that its board would have to approve all contracts going forward. Drew refused to enter into an agreement with Elumenus and walked away from the bargaining table. Instead, in January 2013, Drew formed GEM with the intent of interfering with Elumenus's UNICOR contracts. At the time, Drew had knowledge of Elumenus's contracts, prospective contracts, and strategy for pursuing business with UNICOR because Drew had been a member of Elumenus's strategic team and had interactions with Trout.

According to the third amended petition, Rainbolt resigned from Elumenus in January 2013 and went to work for 540 Energy, a company controlled by Drew that shares employees and offices with GEM. Rainbolt continued to work with Drew, GEM, and Trout to interfere with Elumenus's contracts and prospective contracts. Drew and GEM spent months negotiating the terms of an eventual employment contract with Trout. During this time, Trout secretly provided documents and proprietary information of Elumenus to Drew and GEM. Drew and GEM used

this information in their pursuit of Elumenus's UNICOR contracts. After Trout's resignation from Elumenus, Drew and GEM continued to pursue Elumenus's contracts, going so far as to replace Elumenus's logo with the GEM logo on Elumenus's marketing materials.

ESE, GEM, Drew, Cunningham, and Access each filed a special appearance and motion to dismiss. ESE, GEM, and Drew asserted, among other things, their principal place of business or residence was in South Carolina, they had not done business with or against Elumenus in Texas, and they had never aided or abetted Rainbolt in breaching any fiduciary duties in Texas. Cunningham asserted he was a resident of Washington D.C., had never been to Texas, did not furnish any goods or services to Elumenus in Texas, and generally lacked minimum contacts with Texas sufficient to satisfy constitutional requirements of due process. Access alleged it was a limited liability company formed in Washington, D.C., it had not recruited any Texas residents for employment inside or outside Texas, and also generally lacked minimum contacts with Texas. The trial court denied all of appellants' motions to dismiss, and this appeal followed.

We first address Drew, ESE, and GEM's fourth and fifth issues and Cunninham and Access's sixth issue in which they argue the trial court erred in denying their motion to strike Elumenus's third amended petition and in considering the allegations contained therein. Elumenus filed its third amended petition on October 15, 2013, two days before the hearing on appellants' special appearances and motions to dismiss. Appellants filed a motion to strike Elumenus's third amended petition on the grounds that it operated as a surprise and prejudiced appellants in connection with the special appearance hearing. The trial court did not rule on the motion to strike. On October 22, 2013, the trial court entered the order denying appellants' motions to dismiss. The order stated, "[a]fter reviewing the pleadings and evidence on file and hearing the arguments of counsel," it was the opinion of the court that the motions to dismiss should be denied in all respects.

We must *presume* the trial court granted leave to file a late pleading even though the filer failed to request leave when: (1) the record fails to show that the trial court did *not* consider the amended pleading and (2) there is not a sufficient showing of surprise or prejudice on the part of the opposing party. *Wilson v. Korthauer*, 21 S.W.3d 573, 578 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Goswami v. Metro. Sav. & Loan*, 751 S.W.2d 487, 490 (Tex. 1988)). In determining if the first prong of the *Goswami* presumption is satisfied, the reviewing court is to consider whether the amended petition was part of the record before the trial court and whether the judgment states that the trial court considered all the pleadings on file. *Korthauer*, 21 S.W.3d at 578; *see Goswami*, 751 S.W.2d at 490. If both of these questions are answered in the affirmative, the first prong of the test is met. *Korthauer*, 21 S.W.3d at 578; *see Goswami*, 751 S.W.2d at 490. Here, Elumenus's third amended petition was filed in the trial court and is a part of the record; additionally, the trial court's order states the trial court "review[ed] the pleadings and evidence on file." Therefore, because the record does not show that the trial court did *not* consider the amended petition, the first prong of the test for application of the *Goswami* presumption is satisfied. *See Korthauer*, 21 S.W.3d at 578; *see also Goswami*, 751 S.W.2d at 490.

The second prong of the test focuses on the surprise or prejudice to the party opposing the filing of the amended pleading, including whether that party moved to strike the late-filed pleading. *Korthauer*, 21 S.W.3d at 578; *see Goswami*, 751 S.W.2d at 490. The record shows appellants filed a motion to strike Elumenus's third amended petition and alleged surprise and prejudice flowing from its untimely filing. However, appellants failed to obtain a ruling on their motion to strike. To preserve a complaint for appeal, the record must show that the trial court ruled or refused to rule on a motion. *See* TEX. R. APP. P. 33.1(a)(2). Texas case law holds that absent such a showing, the appellate court is to presume the trial court considered the late-filed

–8–

amended petition in accordance with *Goswami*. *Korthauer*, 21 S.W.3d at 578. Therefore, because appellants failed to obtain a ruling on their motion to strike, there is not a sufficient showing of surprise or prejudice to overcome the second prong of the test for application of the *Goswami* presumption. *See Korthauer*, 21 S.W.3d at 578. Having concluded that both prongs are satisfied, we must find that the *Goswami* presumption applies. *See id.* Accordingly, we presume that Elumenus's third amended petition was properly before the trial court, and therefore, we treat it as the live pleading in the case. *See id.* Under these circumstances, we conclude the trial court did not err in denying their motion to strike Elumenus's third amended petition and in considering the allegations contained therein. We overrule Drew, ESE, and GEM's fourth and fifth issues and Cunningham and Access's sixth issue. Because of our disposition of these issues, we need not address Drew, ESE, and GEM's third issue in which they argue the trial court erred in concluding Elumenus's response to appellants' special appearances could contain the jurisdictional allegations set forth in the third amended petition.

We next address Cunningham and Access's third, fourth, and fifth issues in which they argue the trial court erred in concluding they consented to jurisdiction and challenge the legal and factual sufficiency of the evidence to support the trial court's finding/conclusion that Cunningham and Access consented to jurisdiction in Texas and it would not be unreasonable to enforce the forum selection clause against Cunningham and Access.

As to Cunningham, the record shows the contract between Access and Elumenus was executed "through duly authorized representatives," and the representative for Access was Cunningham. Elumenus attempts to characterize the actions of "Cunningham and Access" as identical. However, Cunningham signed the contract between Access and Elumenus in a representative capacity. Where it is apparent from the entire contract that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation, it is

–9–

the corporation's contract. *Ward v. Prop. Tax Valuation, Inc.*, 847 S.W.2d 298, 300 (Tex. App.—Dallas 1992, writ denied). In such a case, the signing officer is not individually liable on the contract. *Id.* Under these circumstances, we agree it would be unreasonable to enforce the forum selection clause in the contract between Access and Elumenus against Cunningham. We sustain Cunningham and Access's fifth issue as to Cunningham.

Access, in support of its argument, cites the forum selection clause in the Access/Elumenus contract, which provides, in part: "Access and Elumenus will attempt to settle any controversy, dispute, difference, or claim between them concerning the performance, enforcement, or interpretation of" their agreement. Access argues the section of the contract regarding disputes requires a three step process: (1) the parties must attempt to settle their dispute "through direct discussion in good faith"; (2) if those "good faith" discussions do not enable the parties to resolve their dispute, then the parties must "submit [their] dispute to non-binding mediation in Dallas, Texas"; and (3) if mediation is unsuccessful, then and only then are the parties authorized to file suit in Collin County. We disagree.

> The Disputes section of the contract also provides:
>
> Neither Party will file a lawsuit against the other until not less than sixty (60) days after the mediation referred to herein has occurred, unless one or both parties is genuinely and reasonably concerned that any applicable statute of limitations is on the verge of expiring or if the circumstances necessitate the seeking of injunctive relief.

Here, Elumenus filed suit seeking, among other things, injunctive relief preventing Trout from altering documents, enjoining all appellants from interfering with Elumenus's client relationships, competing with Elumenus, or breaching their agreements with Elumenus. Under the terms of the contract, circumstances necessitating injunctive relief permit the filing of a lawsuit without the necessity of mediation. Accordingly, the trial court did not err in concluding Access consented to jurisdiction in Texas. We overrule Access's third, fourth, and fifth issues.

In Drew, ESE, and GEM's first and second issues and in Access's first and second issues, they argue the trial court erred in denying their special appearances and they sustained their burden of negating all bases of jurisdiction pled by Elumenus.

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805-06 (Tex. 2002). When resolving this question of law, a trial court must frequently resolve questions of fact. *Id.* at 806. On appeal, the trial court's decision to grant or deny a special appearance is subject to de novo review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Id.* When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Id.*

A Texas court may exercise jurisdiction over a nonresident only if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal due process guarantees. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015). The definition of "doing business" in Texas includes contracting "by mail or otherwise with a Texas resident" when either party is to perform the contract in whole or in part in this state or committing a tort in whole or in part in Texas. *Id.* § 17.042(2). "Doing business" also includes recruiting Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. *Id.* § 17.042(3). The long-arm statute's broad doing-business language allows the statute to "reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Federal due process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant. *See id.* Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). There are three parts to a "purposeful availment" inquiry. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* And finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. The purpose of the minimum contacts analysis is to protect a defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Am. Type Culture*, 83 S.W.3d at 806.

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction: general and specific. *Moki Mac*, 221 S.W.3d at 575. A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a "more demanding minimum contacts analysis" than for specific jurisdiction. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). For general jurisdiction to exist, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive

than that will not qualify for general in personam jurisdiction." *Id.* If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *BMC Software*, 83 S.W.3d. at 796.

In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If we conclude a nonresident defendant has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, then we address whether the defendant's alleged liability arises out of or is related to those contacts. *Moki Mac*, 221 S.W.3d at 576. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585. The mere sale of a product to or a single contract with a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. *Michiana*, 168 S.W.3d at 786.

The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. The nonresident defendant then assumes the burden of negating all bases of jurisdiction alleged. *Id.* Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo. *Id.*

Because we have already determined the trial court did not err in concluding Access consented to jurisdiction in Texas, we need not further address Access's claims.

As to Drew, ESE, and GEM, we presume the trial court resolved all factual disputes in favor of the judgment. *See Am. Type Culture*, 83 S.W.3d at 806. The third amended petition

–13–

alleges that, following the award of the UNICOR contract, Rainbolt was developing a relationship with Kingsun, which manufactured outdoor lighting. In "April-May 2012," Elumenus was awarded a contract to install outdoor lighting at Fort Buchanan, Puerto Rico. At that time, Rainbolt informed the Elumenus Board of Directors that ESE, not Elumenus, had an exclusive contract with Kingsun, and Elumenus needed to order the outdoor lighting through ESE. Rainbolt allegedly negotiated with ESE and its president, Drew, to create an agreement between Elumenus and ESE whereby Elumenus would pay only a small markup on product ordered through ESE. In August 2012, another UNICOR project required Elumenus to provide outdoor lighting components to be processed through UNICOR's Danbury, Connecticut location. Once again, Rainbolt insisted that ESE had to be involved, claiming ESE still had an exclusive contract with Kingsun.

All of the products provided by Elumenus needed UL certification. Elumenus paid for the certification process in its entirety, yet Drew, allegedly without Elumenus's knowledge or consent, arranged to have ESE's name put on the certification as the listee on the product. As a result, Elumenus did not have its name on the certification, which UNICOR cited as a defect in Elumenus's performance. ESE and Drew refused to remove ESE as listee or add Elumenus's name.

In December 2012, it became apparent Drew had told Kingsun that Elumenus was not a company with which it should do business; Elumenus was a bad business partner; and ESE, rather than Elumenus, was the stateside manufacturer. In early 2013, Drew obtained a deal for himself and other appellants with UNICOR to provide additional LED lighting at Fort Buchanan, Puerto Rico. Elumenus was excluded.

Don Trout, Elumenus's sales manager, allegedly worked with Drew and ESE to sell ESE's product to UNICOR for assembly and use on United States military bases. Although

Trout had a confidential disclosure agreement with Elumenus in which he agreed not to make use of trade secrets or confidential information, including customer lists and pricing, Elumenus alleged Trout made use of Elumenus's customer lists, products, and other information in marketing LED lighting products for sale outside of and in violation of his agreement with Elumenus.

ESE and Drew worked "hand in hand" with Trout and were able to learn about the projects UNICOR awarded Elumenus and all of Elumenus's perspective contract with UNICOR. ESE and Drew had significant access to Elumenus's dealings with UNICOR and the "Elumenus/UNICOR value proposition." Drew, ESE, and Trout put together sales sheets and other marketing materials bearing the Elumenus and UNICOR logos. On the marketing materials, Drew listed himself as a contact and provided an Elumenus email address rather than his ESE email address. Drew listed himself as the "National Product Manager" of Elumenus/UNICOR.

Rainbolt "forged a secret alliance" with Drew and ESE. As part of this alliance, Drew, ESE, and Rainbolt arranged to have ESE's name put on the certification as the UL listee on products to be provided to UNICOR. In late 2012, Elumenus informed Drew that it would no longer buy product from his company under their agreement, and a new agreement would be necessary. Elumenus had discovered the distributor agreement between Rainbolt and Drew and decided that its board would have to approve all contracts going forward. Drew refused to enter into an agreement with Elumenus and walked away from the bargaining table. Instead, in January 2013, Drew formed GEM with the intent of interfering with Elumenus's UNICOR contracts. At the time, Drew had knowledge of Elumenus's contracts, prospective contracts, and strategy for pursuing business with UNICOR because Drew had been a member of Elumenus's strategic team and had interactions with Trout.

Also in January 2013, Rainbolt resigned from Elumenus and went to work for 540 Energy, a company controlled by Drew that shares employees and offices with GEM. Rainbolt continued to work with Drew, GEM, and Trout to interfere with Elumenus's contracts and prospective contracts. Drew and GEM spent months negotiating the terms of an eventual employment contract with Trout. During this time, Trout secretly provided documents and proprietary information of Elumenus. Drew and GEM used this information in their pursuit of Elumenus's UNICOR contracts. After Trout's resignation from Elumenus, Drew and GEM continued to pursue Elumenus's contracts, going so far as to replace Elumenus's logo with the GEM logo on Elumenus's marketing materials.

The record supports a finding that Drew, acting "hand in hand" with ESE, and GEM reached into Texas, recruited Trout, and Trout provided proprietary information about Elumenus. We conclude this activity constituted "doing business" in Texas and supported the exercise of specific jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2015) *Moki Mac*, 221 S.W.3d at 585. Drew, ESE, and GEM's alleged liability arises out of or is related to these contacts. *See Moki Mac*, 221 S.W.3d at 576. Therefore, the trial court did not err in denying Drew, ESE, and GEM's special appearances. *See id.* at 574-76. We overrule Drew, ESE, and GEM's first and second issues.

We reverse the trial court's order denying Cunningham's special appearance and dismiss Elumenus's claims against Cunningham for lack of jurisdiction. In all other respects, we affirm the trial court's judgment.


131551F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL DREW, GOVERNMENT ENERGY MANAGEMENT, LLC, EVOLVING SOLUTIONS IN ENERGY, LLC, DONOVAN CUNNINGHAM, AND ACCESS FEDERAL BUSINESS, LLC, Appellants

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-02318-2013.
Opinion delivered by Justice Bridges. Justice Fillmore participating.

No. 05-13-01551-CV       V.

ELUMENUS LIGHTING CORPORATION, INC., Appellee

In accordance with this Court's opinion of this date, the trial court's order is **REVERSED** to the extent it denies the special appearance of Donovan Cunningham, and judgment is **RENDERED** that:

Elumenus Lighting Corporation, LLC's claims against Donovan Cunningham are **DISMISSED** for lack of jurisdiction.

In all other respects, the trial court's order denying appellants' special appearances is **AFFIRMED**.

It is **ORDERED** that appellee Elumenus Lighting Corporation, Inc. recover its costs of this appeal from appellants Michael Drew, Government Energy Management, LLC, Evolving Solutions in Energy, LLC, and Access Federal Business, LLC.

Judgment entered May 7, 2015.